May proceed. Thank you. My name is Tom Higgins. I am Appellant Rodney Langford's attorney. I was also his trial attorney. Before I get in the issues that are raised in both of the opening and answering and recovery, I would like to tell the court what this case is not. It is not really a Terry case or any of his progeny. And it doesn't really involve the police extending a valid traffic stop, such as Illinois versus Tobias, Arizona versus Johnson or Rodriguez versus the United States. It involves the prolonged detention of Mr. Langford without reason. So we're having difficulty here. Counsel, we're having difficulty hearing you for two reasons. We need to turn the volume up. Thank you, Callie. Also, if you could speak slower, because I didn't hear what when you said this doesn't involve. I didn't hear what you said this doesn't involve. Right. I said it didn't involve the case of Terry. Is that okay? Okay. Oh, Terry. Or Terry versus Ohio. The case doesn't involve the police getting a valid traffic stop like Illinois versus Tobias, Arizona versus Johnson or Rodriguez versus U.S. It's the prolonged detention without reasonable suspicion. It turned into an arrest without probable cause, followed by a interrogation without Miranda. Now, at the time that police and agents drove up behind my client's Impala at the gas station, they were simultaneously attempting to stop on the U-Haul trailer that the schools were in. So I think it bears looking into what was the evidence the police had, the agents had at that time that pointed to an illegal activity. The sum total was they had a call from the Flagstaff Homeland Security that they intercepted a suspicious package. They went to look over at the storage area and ran a dog around the schools that did not alert. The damaged material labels on the schools did not look professional. And in their experience, they have other cases where schools have been used in smuggling. That's it. Well, let me interrupt you, counsel. Let me interrupt you for a moment, please. I'd like you to focus on where you began, and that is whether there is any evidence of reasonable suspicion to justify the stop. Forget for a moment, if you can, whether it was consensual or investigatory. You just said in a sentence, this is all they had. But I found in the record that the officers received a tip regarding suspicious freight arriving at ABF Shipping Center. They set up a surveillance. They noticed that spools of copper were previously used and appeared damaged. Lankford and Taylor arrived to ABF together in a U-Haul truck, picked up the damaged spools, went to a U-Haul storage facility together where Lankford exited the U-Haul and entered the Black Impala. Continued surveillance of both parties. Officer pulled behind Lankford when Lankford entered a new gas station. Lankford said he pulled over to, quote, check on his buddy, end quote. His buddy was searched, as was the U-Haul. Cash was found in the spools. Officers know a pattern of narcotics being found. Whenever cash is found. And furthermore. So, don't we have enough observation and communication here in the record, setting aside the trial judge's very brief comments with respect to the stop to support a finding of reasonable suspicion? Absolutely not. That entire scenario could have used to describe hundreds of people with pickup trucks in Tucson. The only thing that amounts to suspicion of the illegal activity was the tip that it was suspicious to some other agent. And the. And what about the discovery of the U-Haul? Do we ignore that? The fact that they were writing in tandem with what they found in the U-Haul? Do we ignore that? Well, no, but they had reasonable suspicions to stop the U-Haul. That's why I conceded it. The hearing, because I didn't have standing to object to that, because there was a traffic violation that wanted them to stop it. But at that point in time, they didn't have any reasonable suspicion. Those things your honor listed do not amount to reasonable suspicion because they are not articulate, articulable facts that point to criminal activity. None of it, except that a suspicious package call came in from HSI Flagstaff. Didn't Taylor who was the driver of the U-Haul say that he was driving alone? And so that's a direct lie? No, I don't think Taylor said that. He said he had picked up the spool when they searched it and found the money. He denied knowing it was in there. And the agents made both he and my client file an abandonment form. But I do not recall him saying he was carrying a load. No, that he was by himself. He probably did say he was by himself. Mr. Langford never said that. He said pulled over because he saw the U-Haul being stopped and he didn't know where to go. Right. No, that's what I'm saying. Doesn't that really add to the reasonable suspicion here? If the officers saw them working together, one enter a U-Haul, one enter, I forget the other car and the driver of the U-Haul claiming that he's acting by himself. That clearly suggests lying or minimizing the role of the others. Well, what Taylor did, as your Honor indicated, Taylor tried to distance himself from any activity. He did, in fact, say he was on his own. He was just delivering things and didn't know what was in the spool. That's true. Right. And did that happen immediately at the stop? So the officers would have known that when they prolonged Langford's detention. I don't know if the Langford officers knew that. They were in sight of the U-Haul when it was stopped in the area in Tucson. And that reasonable suspicion arose from the traffic violation. I'm not conceding that they had enough to stop the U-Haul. Other than that, those were very, very weak connections that two people are moving something. That's not really a substantial evidence of anything. But the fact is you can't take that reasonable suspicion and use it in the gas station stop any more than I have standing to oppose the U-Haul stop. That stop at the gas station, if you look into the record, there was a statement from the evidentiary hearing that Detective Hopkins arranged to have the vehicle stopped. There was no reasonable suspicion there at all. And my client just pulled into the gas station because he didn't know where to go, followed almost immediately by Agent Sandoval with flashing lights appearing behind him. Now we're getting to the oft repeated phrase by the government that it was consensual. I don't know about your honors, but when a police car with lights flashing behind me, I do not feel free to leave. And I think the reasonable person standard of Terry and those cases all indicate that what a reasonable, innocent person would do. And when you see flashing lights behind you when you're sitting still, it's an indication you're not free to leave. The real problem came and showed you where the intent was immediately upon Sandoval going to my client's car. My client testified he didn't even have time to get out of the car. He went out to the car, got him out. In Sandoval's mind, he testified at the evidentiary hearing that he was not going to let him, he was not free to leave. And he essentially informed my client of it by saying, you can be on your way if the search of the U-Haul shows up nothing. The two estimates of time involved were from Sandoval who said 10 to 20 minutes, my client who repeatedly said 30 to 45 minutes. Counsel, do we know at what point the stop of the Impala of Langford that the officer at Sandoval said that? Where he said, you're free to leave as soon as we find out what happens to the U-Haul? Yeah. No, we don't have those times because they are, oddly enough, not in any of the reports about that. And there was no question, but it was a radio call from U-Haul and it had to be in the neighborhood of 20 minutes later where they said they found something. That's when my client was formally handcuffed. Our position in this appeal is that he was arrested when he was seized, which was when the police vehicle of Sandoval had the lights on and pulled behind him within rapid time limit. Three to five officers showed up. They searched the vehicle, then searched the trunk and all without Miranda. And what happened is that he made statements without Miranda. It was an active investigation. Originally, Miranda was looked at as being required when an investigation had focused on the defendant. That was to protect police, and rightly so, of being able to go up and talk to people anywhere without having them to read Miranda rights, asking questions. But when that investigation had focused, then it was required. And you can't get much more focused than Mr. Langford was at that gas station, searching the vehicle, searching the trunk, questioning about where he came from, where he was going. That's pretty focused, especially since for the last two days, they've been conducting surveillance. No Miranda was read to him. And it was even borne out more by the Miranda at the station. I wanted to note in the government's answering brief on page nine, they have a sentence that starts with, at the station, when Miranda was read. That's at the police station, not the gas station. There's no hint that it was read at the gas station. At the police station, 14 minutes of interrogation went by, and an agent showed up and said, let me go talk to him. And also said, well, he's telling you pretty much what he told us. That means they've already done the interrogation. He then went in to build rapport because of his earlier conversation with Mr. Langford and further question him after Miranda. It was a sham. The entire thing was a sham. This cascading series of events where they were conducting surveillance to find out information of criminal activity. That's the point of surveillance. They surveilled it. They actually went into the schools at ABH freight and found nothing. They then claimed that the damaged material labels were unprofessional and that this was not the first time they heard of spools being used in drug smuggling. But there wasn't any indication those spools were anything more than what they said they were. The dog didn't sniff on them. Nothing was unusual except a hand-printed label, damaged materials. So at that point, they decided to stop those vehicles without any legal niceties, such as a reason. They stopped the U-Haul because of a pedestrian having to back up in a crosswalk and the vehicles already stopped. It's not disputed at the gas station. I would like to deal with a little bit about investigatory stops, as your honor mentioned. Investigatory stops, you can't use a custodial interrogation without Miranda to get information after a stop. That's the Hardy case from 11th Circuit in 1988. But what the government repeatedly says is this was consensual. In fact, Judge Collins ruled that after the evidentiary I can't imagine a more non-consensual one. Counsel, suppose we agree that the stop did develop into an investigatory stop. Why wasn't there sufficient reasonable suspicion at that point to support the investigatory stop? As I was talking about before, there was only very insufficient. So that's your position. And Judge Collins didn't make a finding that there was reasonable suspicion at that point, right? No. The evidentiary hearing, uh, well, he made it during that, after that ruling, yes. He said there was not reason, there was reasonable suspicion. I thought he said there was, it was a consensual stop. That's what the government's been arguing. No, no, I hear, but I mean, with Judge Collins, I'm getting to the point. Should Collins have made an express ruling that there was reasonable suspicion? Right. He did, Judge. I can't remember it, but he did make that ruling there was reasonable suspicion. And that was the point of the motion, including filing afterwards a motion to reconsider. But you are right. That is correct. I'm sorry, I'm unclear. So Judge Collins made a finding reasonable suspicion to support the stop of the IMPALA? He did. I cannot remember it from the briefing, Your Honor. Well, assuming for a moment that he didn't, just assume that, whether he did or not. Is there any reason why we can't make that finding based on the record before us? I imagine you can. The burden of proof on that was, I believe, a de novo review, so you certainly could. All right, thank you, counsel. That's all I have on my argument. Thank you. Yes, thank you. May it please the Court, I'm Bob Mistel from the U.S. Attorney's Office in Tucson on behalf of the United States. Just to start off with what we were just discussing, Judge Collins did not make a finding of reasonable suspicion. His finding was essentially that the defendant's rights weren't violated, which is basically what Judge Collins said. And Judge Collins was correct in that regard because this clearly started out as a consensual encounter. The defendant pulled into the gas station and stopped by himself without any prompting from any law enforcement officer. If the encounter at the gas station evolved into an investigatory detention for which reasonable suspicion was required, there was reasonable suspicion at that point. Probably the best, as to the earliest point when the encounter became an investigator, excuse me, investigatory detention would probably have been when the agent made the statement essentially that if there's nothing illegal going on, you'll be free to leave shortly. That in the record was made while they were at the back of the vehicle in talking about the search of the trunk. So, it was some point into the encounter where that statement was made because they had already been discussing what was going on. They were already had informed, the agents had informed the defendant they were looking at the U-Haul truck. The defendant had said he was just basically a laborer that had flown across the country to move forcefuls of thread, excuse me, forcefuls of cable. So, if you look at that from that point, the agents had a lot of reasonable suspicion. What timing is that? If it took 20 minutes for him to be totally detained or arrested, do we know like how many minutes into it this happened? The record does not have times. It just has, they were kind of going in sequence. The statement was made about you'll be free to leave shortly if there's nothing going on was made while they were at the back of the vehicle in connection with the search of the trunk. They had already searched the car. They had already had some discussion with the defendant. So, but there's no specific time in the record. Can you make an estimate based on what is in the record? I would say it's probably at least five to 10 minutes in. I would say probably it would be a safe estimate, conservative estimate. Because they'd had some conversation and they had searched the car itself. Right. So, at that point, there was a lot of reasonable suspicion. They had the information about a suspicious shipment of cables that was consistent with prior drug seizures. They had observed the defendant and Taylor pick up the cables. They had observed them split into different vehicles and start traveling in tandem. They had observed them going on a circuitous route which the agents inferred was counter surveillance activity. The agents that stopped Taylor's truck had heard Taylor's false statement that he wasn't working with anybody else, which they knew that was false because they had seen him working with the defendant. Did that happen immediately at the stop of the U-Haul? Again, if the record shows, it probably did because it was the way it's recited in the record and this is at ER 41. The agent has said he contacted Taylor and he asked him about the shipment in the U-Haul and then the response from Taylor was he denied really knowing anything about it. He said he was just being paid to pick up a shipment and deliver it somewhere else. He denied working with anybody else at first. So, that seems to be it was all right at the beginning of that encounter. And under the collective knowledge doctrine, the agents at the scene of Lankford, the defendant's stop, don't need to have specific knowledge of that because you can consider the knowledge of all the agents who are working together in the investigation. Counsel, can I ask you a question? Given that Judge Collins didn't make a finding of reasonable suspicion and that, suppose we find that, yes, this ultimately was an investigatory stop, what is the appropriate thing to do here if we also find there was reasonable suspicion? Do we just say, but that was harmless error because there was ample reasonable suspicion? I think this court's guess was you can affirm on any basis supported by the record and the record certainly supports a finding of reasonable suspicion. So, I think the court could still affirm on that basis. Because it was an investigatory detention with reasonable suspicion, it did not evolve into a de facto arrest that required Miranda warnings at the gas station. Can I ask about the circuitous driving? What does that mean? It didn't seem like there was any counter-surveillance going on. It just seems odd that if there was counter-surveillance, one guy gets stopped, the other guy stops. That doesn't sound like counter-surveillance. Circuitous, according to the agents, the defendants went into basically a circle as they were driving. But is it surveillance or is it that they're trying to see if they're being surveilled? Yeah, they're doing counter-surveillance to see if they're being followed. They're being followed. That's why they go in the circle? Presumably, a near bystander who was unconnected with law enforcement wouldn't follow them around the circle basically. Oh, okay. You know what I mean? I'm suspicious of that one. But the agents testified that they inferred from what they observed that it was counter-surveillance activity. What the agents are saying is the defendants were basically trying to see if they were being followed. So you're saying that evading surveillance is equals counter-surveillance. I always thought counter-surveillance was more affirmative. I'm equating it with trying to see if they're being followed basically. Both sides are following each other. Yeah, in a circle. But so, after the investigatory detention at the gas station, it did not become a de facto arrest. The defendant, a reasonable... You have to concede that when the officer said, you're free to leave when we find nothing, as long as we find nothing in the U-Haul. That totally transformed. It could not have been consensual at that point. At that point, it's probable that it became an investigatory detention, but not an arrest. Did you argue that to Judge Collins? I believe it was argued. I'm not positive. But again, this court can affirm on any basis in the record. And there wasn't a de facto arrest. A reasonable person would not have assumed they would not have been free to leave. And a reasonable innocent person would not have assumed they would not have been free at the end of the encounter. And in fact, that's what the agents told the defendant. And unless the court has any further questions. Thank you. Thank you. Mr. Miskell, I'll give you a minute to respond. If there's anything further. Just briefly, Your Honor. You said Mr. Miskell, help me up for a second. Tom Higgins. Oh, I'm sorry. I got it backward. Yes, I'm sorry. Mr. Higgins. No problem. The key to the matter is, in fact, if we go back just to look at the similarity with the ballots passed off, such as Rodriguez. Those cases question the purposes of the extra time. Was it outside the purpose of the original stop reason, which was the traffic violation? The fact that he, Mr. Lankford, was told he would be free to go if certain things happened in the future. It has to be an improper detention. If Your Honors look and agree that Agent Sandoval driving up behind him with the lights on was the seizure, then you have to look as was there reasonable suspicion for that because it's a stop or two. At one point, he was arrested. That was a seizure. He was arrested there. The information that Mr. Miskell and the government have brought forward was, oh, they watched him do things in tandem. I just heard some of the counter surveillance stuff. There is no indication of the record of any route followed or anything like that. It's just the government's belief that they were engaging in counter surveillance, just like their belief that HSI and Flagstaff had a suspicious package. Therefore, it has to be drugs or money. There is no evidence of that. Without that evidence, and you asked me a question earlier on whether Collins ruled that there was no reasonable suspicion. I went back to my notes. He did not rule that. He ruled that it was a consensual contact. In just one brief case, and I'll be done, the United States v. Chamberlain, that was from this court a 20-minute detention in a patrol car in which the suspect was observed in question. It was a custodial interrogation. I think Mr. Miskell saying it was five minutes is being generous. His own agent said 10 to 20 minutes, possibly more. This was far outside anything like the seven or eight minutes in Rodriguez. Thank you. Thank you, counsel. U.S. v. Lankford will be submitted. This court will adjourn for this session for today. Thank you. Thank you.
judges: WARDLAW, BUMATAY, Zouhary